IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| WILLIAM W. CAMERON,<br><br>            Plaintiff,<br><br>      vs.<br><br>DOCTOR ELIZABETH RANTZ,<br>M.D., et al.,<br>            Defendants. | CV-08-00042-H-DWM-RKS<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

Plaintiff, Mr. Cameron, a state prisoner proceeding pro se and in forma

pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging a

denial of medical care while incarcerated at the Montana State Prison.  The Court

has jurisdiction pursuant to 28 U.S.C. § 1331.  This case is referred to the undersigned to issue findings and recommendations by Order of the Hon. Donald W. Molloy.  (Court Doc. 46.)  Currently pending is Defendants' Second Motion for Summary Judgment (Court Doc. 98) and Plaintiff's Motion to Strike Defendants' Reply.  (Court Doc. 115).

Mr. Cameron has been ill continuously since entering prison.  Defendants have continuously considered Mr. Cameron's complaints and have provided treatment.  They have offered other treatment but Mr. Cameron has refused it unreasonably.  Mr. Cameron has not met his burden to come forward with factual evidence to refute Defendants' showing.  Defendants are entitled to summary judgment.

## I.  Motion to Strike Reply

Mr. Cameron moves to strike Defendants' Reply and Dr. Rantz's supplemental affidavit as being untimely.  (Court Doc. 115.)  The local rules allow a moving party to file a reply within fourteen days after a response to a motion has been filed.  L.R. 7.1(d)(1)(c).  Mr. Cameron filed his response to Defendants' Motion for Summary Judgment on December 22, 2009.  (Court Doc. 109.)  Defendants filed their reply on January 5, 2010 (Court Doc. 113), the fourteenth day after Mr. Cameron filed his response.  The reply is timely.

Mr. Cameron also agues that Dr. Rantz's supplemental affidavit contains hearsay because she discusses the treatment Mr. Cameron received from the doctors at the Heart Institute.  Dr. Rantz's affidavit refers to Mr. Cameron's medical records which are kept in the regular course of business at the prison and therefore are a hearsay exception.  See Fed.R.Evid. 803(6).  The Motion will be denied.

## II.  Motion for Summary Judgment

Defendants moved for summary judgment on the basis of qualified immunity.  (Court Doc. 98.)  In Mr. Cameron's response, he contested Defendant's Motion and made two procedural motions as well.  (Court Doc. 109, 110.)  Those two motions will be dealt with first, then the substantive motion will be addressed.

### A.  Motion to Strike Medical Summaries

Mr. Cameron argues Defendants' medical summaries, filed in support of their Motion for Summary Judgment, should be stricken because he has not received the medical records supporting that summary.  First, the medical records filed by Mr. Cameron in support of his Motion to Compel support the medical summaries filed by Defendants.  Furthermore, the parties had an opportunity to resolve the discovery issues in this matter.  A report was filed indicating Mr. Cameron was being provided a complete copy of medical records on or before January 19, 2010.

Mr. Cameron filed a 37-page rebuttal to Defendants' report on February 3, 2010 (Court doc. 117) accusing Defendants of being misleading.  He then filed a 68-page report on February 23, 2010.  (Court doc. 118.)  Mr. Cameron admitted Defendants produced a new copy of the discovery documents on January 22, 2010 which, for the most part, complied with the Court's Order in that the records were numerically stamped, sorted in categories, and sectioned by tabs.

While Mr. Cameron still contends Defendants have not fully complied with discovery, that does not support his motion to strike the medical summaries.  The medical records Mr. Cameron filed in support of his motion to compel support the medical summaries.  The medical summaries will not be stricken.  Defendants submitted their summaries pursuant to Rule 1006 of the Federal Rules of Evidence which provides,

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.  The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place.  The court may order that they be produced in court.

Defendants represented that Mr. Cameron was given the documentation supporting those summaries.  Mr. Cameron has not identified specific information included in those summaries not supported by documentation he has been given.  Moreover, the summaries provided by the Defendants were not exclusively relied

upon, but rather the medical records Mr. Cameron presented with his motion to compel were examined.

**B.  Motion to Strike Rantz Affidavit and Conviction Evidence**

Mr. Cameron asks that the testimony of Dr. Rantz be stricken because she indicated in her affidavit that documents were attached and they were not.  The testimony of Dr. Rantz will not be stricken for failure to attach an exhibit to her affidavit.  This mistake was corrected in Dr. Rantz's supplemental affidavit.  (Court Doc. 113-1).

Additionally, Mr. Cameron asks that evidence regarding his conviction be stricken.  While the relevance of this information is questionable, it will not be stricken.  Mr. Cameron's conviction was not considered in the evaluation of Defendants' Motion.

**C.  Substantive Motion for Summary Judgment**

      **1.  Standard**

A party is entitled to summary judgment if they can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  That is, where the documentary evidence permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. *Id.* Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment. *Id.*

At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson, 477 U.S. at 249-50*.

> The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]. The judge's inquiry, therefore, unavoidably asks whether reasonable

jurors could find by a preponderance of the evidence that the plaintiff
is entitled to a verdict.

*Anderson*, 477 U.S. at 252.

## 2. Analysis

This discussion shall only cover properly plead claims.  Any additional

allegations raised only in response to Defendant's Motion (such as the alleged

heart attack incident, alleged chest pains on March 17, 2006), but not alleged in

Mr. Cameron's Amended Complaint (Court Doc. 7) will not be addressed.

Defendants argue they are entitled to qualified immunity because  they were not

deliberately indifferent to Mr. Cameron's serious medical needs.

Qualified immunity shields government officials from litigation.  Clement v.

Gomez, 298 F.3d 898 (9th Cir. 2002).  In Saucier v. Katz, 533 U.S. 194, (2001), a

two-step sequence was mandated for resolving qualified immunity claims: 1)

whether the facts as alleged or shown make out a violation of a constitutional right,

and 2) was the right "clearly established" at the time of the alleged misconduct.

Pearson v. Callahan, 129 S.Ct. 808, 815-816 (2009).  Pearson removed the

mandate of Saucier and judges are now "permitted to exercise their sound

discretion in deciding which of the two prongs of the qualified immunity analysis

should be addressed first in light of the circumstances of the particular case at

hand."  Pearson, 129 S.Ct. at 818.

In the present case, it is logical to proceed with the traditional <u>Saucier</u>

analysis.  First, do the facts as alleged or shown, viewed in a light most favorable

to Mr. Cameron, make out a violation of a constitutional right?  <u>Saucier</u>, 533 U.S.

at 201.  If the answer is no,"there is no necessity for further inquiries concerning

qualified immunity."  <u>Id</u>.

The Eighth Amendment requires that prisoners receive adequate medical

care.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  It is a violation of the Eighth

Amendment when acts or omissions by a prison official are "sufficiently harmful

to evidence a deliberate indifference to serious medical needs."  <u>Estelle,</u>

429 U.S. at 106; <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1111 (9th Cir. 1986).

Deliberate indifference under the Eighth Amendment involves the

consideration of two elements:  "[1] the seriousness of the prisoner's medical

need[;] and [2] the nature of the defendant's response to that  need." <u>McGuckin</u>,

974 F.2d at 1059; <u>see also</u> <u>Lolli v. County of Orange</u>, 351 F.3d 410, 419 (9th Cir.

2003).   That is, a plaintiff must demonstrate "'objectively, sufficiently serious'

harm and that the officials had a 'sufficiently culpable state of mind' in denying the

proper medical care.  Thus, there is both an objective and a subjective component

to an actionable Eighth Amendment violation." <u>Clement v. Gomez</u>, 298 F.3d 898,

904 (9th Cir. 2002)(citing <u>Wallis v. Baldwin</u>, 70 F.3d 1074, 1076 (9th Cir. 1995)).

The objective component of deliberate indifference requires the showing of a serious medical need.  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'."  McGuckin, 974 F.2d at 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104); see also Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

The subjective component of deliberate indifference considers the nature of the defendant's response to the serious medical need and whether the defendant had a culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm."  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998)(quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)).  "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837. "[T]he official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official."  Frost, 152 F.3d at 1128 (quoting Wilson v. Seiter, 501 U.S. 294, 302-303 (1991)).

"This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."

Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060.).  "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Id.

Ordinary medical malpractice is not enough to state an Eighth Amendment claim.  Estelle, 429 U.S. at 106.  Mr. Cameron has not demonstrated that any of the Defendants acts or omissions even suggest malpractice.  A difference of opinion between medical professionals and the prisoner concerning the appropriate course of treatment does not amount to malpractice, much less deliberate indifference. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

When Mr. Cameron entered MSP in January 2003 he was diagnosed with chronic diseases, including Chronic Obstructive Pulmonary Disease (CPOD), hyperlipidima (high cholesterol), hypertention, *cor pulmonale* (cardiac disease related to COPD), morbid obesity, and mild to acute renal failure.  There is no dispute that Mr. Cameron has serious medical needs.  *See* McGuckin, 974 F.2d at 1059; Court Doc. 99–Defendants' brief, p. 7).  Thus, the first prong of the deliberate indifference standard is met.

The second prong examines the nature of the DOC Defendants' response to

Mr. Cameron's serious medical needs.  Defendants responded to Mr. Cameron's

needs and have shown they were not deliberately indifferent to his medical needs.

### a.    Defendants Mahoney, Ferriter, Beeson, and Redfern

There has been no showing whatsoever that Defendants Mike Mahoney,

Mike Ferriter, Myron Beeson, or Cathy Redfern were in any way involved in the

medical care, or alleged lack of medical care, Mr. Cameron received.  The

accusations against them are unsupported, thus baseless.  Their motion for

summary judgment will be granted.

### b.    General Lack of Treatment Claims

Mr. Cameron next contends the documents presented by Defendants show

he was seen many times by the DOC Defendants but the documents do not

establish what medical treatment was actually done.[1]  The Court has reviewed the

medical records presented by Mr. Cameron in support of his Motion to Compel.

The medical records demonstrate a consistent following of Mr. Cameron's medical

condition by Defendants and response to his complaints.  The records are replete

with documented medical tests, medication charts, and charts of doctors visits.

---

[1] Defendants' manner of production of medical records to Mr. Cameron was unreasonable and inexcusable, particularly from so sophisticated a litigant as the State.  The documents were double-sided and out of date order, thus nearly impossible to review.  The Court was forced to wrangle through these records the best it could.  Document productions such as these will not be tolerated. This tactic is expressly prohibited by Fed. R. Civ. P 34.  Defendants have wasted the Court's time and so significantly delayed the resolution of this matter.

For example, on January 25, 2006, Mr. Cameron had an echocardiogram. A week later he had blood work done at Powell County Medical Center. On February 6, 2006, he had a left heart catheterization, graft angiography, and an IMA angiogram. He was then in the infirmary from February 6 - February 7, 2006. On February 16, 2006, he had a chronic care visit with Dr. Evans. On February 22, 2006, the medical team attempted to get an overnight oximetry recording in the infirmary but were unable to do so because Mr. Cameron could not sleep. On March 2, 9, and 16, 2006, Mr. Cameron had appointments with Dr. Evans but Mr. Cameron refused to see Dr. Evans alleging she was "harassing him." Despite his refusal, Dr. Evans still conducted a chart review of Mr. Cameron's records and Dr. Rantz reviewed his chart on March 15, 2006. On March 22, 2006, Mr. Cameron had a follow-up visit with Dr. Gabster from the Heart Institute.

This continues throughout 2006, 2007, and 2008. Rarely did a month go by without Mr. Cameron receiving some type of medical care whether it be a doctor's visit, a diagnostic test, or a medical procedure. A simple reading of these records disproves Mr. Cameron's general allegations of deliberate indifference.

Mr. Cameron also argues that many times he was suffering in pain and was ignored and/or denied medical treatment by Defendants allowing him to knowingly suffer the unnecessary and wanton infliction of pain.

Mr. Cameron admits he signed medical refusals on several occasions but states it was frequently because he was in severe pain, sick and unable to leave his cell without severe pain/suffering/ or breathing problems.  He alleges medical staff knew this yet forced Mr. Cameron to sign a medical refusal either in his housing unit or at the prison infirmary.  He states he signed the medical refusals because of the staff intimidating and badgering Mr. Cameron and threatening Mr. Cameron with write-ups and with threats of being thrown in the maximum security lock-up or hold if he did not sign same.  He contends health care staff knew Mr. Cameron's pain was so bad and he was too sick to sit and wait in the infirmary lobby without laying down to alleviate his pain and suffering and yet they still would not admit him to the prison infirmary.

These harsh accusations are not supported by facts despite Mr. Cameron's obligation to produce facts to avoid summary judgment.  Mr. Cameron makes these assertions vaguely, conclusorily, and generally without specifically identifying when such instances occurred, who was notified, and who declined to treat him.  In contrast, Defendants have presented a detailed listing of his grievances with their responses thereto and documented proof of when he was visited by medical staff.

Mr. Cameron contends the failure to provide medical treatment has caused scarring and damage on Mr. Cameron's heart; damage to his kidneys, lungs, and

stomach; loss of mobility to walk any distance without chest pain; severe breathing problems; and chronic pain in his stomach, lungs, and spine.  He alleges he did not have most of this damage when he came to prison. He produces no medical evidence to support his claims of their existence or that Defendants acts or omissions caused them. At the summary judgment stage, mere unsupported accusations do not prevent summary judgment.  At the least, Mr. Cameron would have to Produce admissible medical evidence that the claimed maladies existed and them that the response was so inadequate to create § 1983 8th Amendment liability.

As set forth above, there is no clear indication from the record that Defendants ignored Mr. Cameron's pain or that they denied him medical care. Defendants have sufficiently demonstrated their responsiveness to Mr. Cameron's medical needs.  To the extent Mr. Cameron identifies specific instances when his pain or medical condition was ignored, those are addressed below.  Defendants clearly refute each claimed instance.

Mr. Cameron alleges that he sent numerous medical requests begging for pain relief/medication but those grievances are not listed in Defendants' exhibits. Mr. Cameron makes no showing as to when these instances occurred.  He presents no evidence except his conclusory statement that his grievances were ignored. This is insufficient to meet his burden to produce facts to demonstrate a factual

issue and overcome Defendants' motion for summary judgment.

Mr. Cameron is clearly a difficult and complex patient with multiple medical problems.  The medical records presented by Mr. Cameron show that Defendants worked diligently to treat Mr. Cameron's diagnosed medical problems.  While this medical treatment may not be precisely the type of treatment Mr. Cameron wants to receive, Defendants are attentive to his medical needs and have put a tremendous amount of time and effort into his medical care.

Summary judgment should be granted on Mr. Cameron's general claims of denial of medical care.

### c.      Open Heart Surgery

Mr. Cameron contends a large majority of treatment prescribed by heart specialist Drs. Gabster, Reed and Goulah was denied by Drs. Kohut and Rantz. (Court Doc. 110, p. 62).  Mr. Cameron admits Defendants sent him to physicians and hospitals outside of the prison but he contends the DOC Defendants "cancelled" the recommended/needed treatment because of the cost even though Defendants were cautioned of the extreme dangers to Mr. Cameron's health, safety, and life.  (Court's Doc. 110, p. 7).  Summary judgment should be granted on these general allegations as there are no facts in the record to show Defendants denied Mr. Cameron needed treatment.

Similarly, summary judgment should be granted on Mr. Cameron's specific claim that he was denied recommended open heart surgery.  Dr. Sanz, an outside heart specialist, attempted to implant a stent in Mr. Cameron's heart on February 6, 2006 but was unsuccessful.  At the end of his report on the procedure, Dr. Sanz stated, "I guess at this point will have to just continue pushing his medical therapy." (Court Doc. 113-7, pp. 8-9).  Mr. Cameron saw Dr. Reed, another heart specialist, on October 11, 2006 and they discussed the failed stent placement.  Mr. Cameron alleges Dr. Reed told him he needed open heart surgery to try to open or replace a vessel to his heart.  Mr. Cameron alleges that despite this recommendation Dr. Rantz said if Mr. Cameron was to have the surgery and had to recover in the prison infirmary (as opposed to the hospital), Mr. Cameron would just die.

Dr. Rantz disputes there was ever a recommendation for cardiac surgery for Mr. Cameron.  She maintains his cardiac condition was actually stable.  She testified Mr. Cameron is a very poor candidate for cardiac surgery, even if it was indicated, because of his pulmonary condition and morbid obesity.  (Court Doc. 113-1:  Supp. Rantz Affidavit, ¶ 10).

Additionally, Dr. Reed's report on the October 11, 2006 visit makes no mention of open heart surgery.  To the contrary, Dr. Reed reported "I think the

long term prognosis for him from the cardiac viewpoint, over the next 15-20 years, is quite reasonable." (Court Doc. 102: Voluminous Exhibits p. 105).

While Mr. Cameron alleges he needed open heart surgery, the medical records and Dr. Rantz's testimony completely refute this. Mr. Cameron has produced no evidence that he needed open heart surgery other than his own unsupported statements as to what Dr. Reed stated. These statements are conclusively refuted by Dr. Reed's medical report. Here, as has frequently occurred in this litigation, Mr. Cameron's harsh, exaggerated accusations find no support in fact. There is no genuine issue of material fact regarding this issue and summary judgment for Defendants will be recommended.

### d.   Scheduled Visits but Not Seen

Mr. Cameron next points to Defendants' exhibit which shows that on eighteen occasions over the three-year period at issue, Mr. Cameron was scheduled to be seen but was not. (Court Doc. 110, p. 12 referring to Court Doc. 100-2-- summary of doctor appointments). But that document and the supporting medical records demonstrate that on five of those occasions Mr. Cameron refused to be seen. On the rest of the occasions, it appears the appointments were rescheduled or Mr. Cameron was not seen because he had just recently been seen. This document does not demonstrate deliberate indifference to Mr. Cameron's medical care, but

rather Mr. Cameron's own lack of cooperation with his caregivers and the numbers of time he was seen for his complaint.  Mr. Cameron produces no admissible facts to show that missing any of these appointments was culpable.

### e.      Refusals to See Specific Providers

Mr. Cameron alleges he was left in severe pain and denied pain medication on February 17, 2006 because he refused to see Dr. Evans.  He contends Dr. Evans made threats to Mr. Cameron and caused him severe anxiety and chest pains as a result of same each and every time she talked to Mr. Cameron, always threatening to lock him up and put him in the hole.

Mr. Cameron will not be allowed to recover for deliberate indifference to his serious medical needs when he has refused to see the treating physician.  This is not evidence of deliberate indifference.  It is rather evidence of a patter of stubborn refusal to cooperate on Mr. Cameron's own part.

### f.      Heart Monitoring Test

On April 9, 2008, Mr. Cameron had a visit with Dr. Goulah, a heart specialist.  Mr. Cameron submits Dr. Goulah ordered a heart monitoring test that lasts three days which Mr. Cameron needed because his heart would stop in the middle of the night four or five times each year only to be jolted back in a violent and painful manner.  Mr. Cameron states the test would determine whether he

needed a pacemaker.

Defendants produced documentary evidence that on March 11, 2008, Dr. Goulah ordered an echocardiogram which was done on April 9, 2008. On June 11, 2008, Dr. Goulah recommended a halter monitor test to test for possible arrhythmia. On June 13, 2008, Dr. Rantz took Cameron's case to the MSP medical review panel to discuss this recommendation. The medical review panel approved Cameron for use of a CPAP machine to provide oxygen during his sleep and deferred approval of the halter monitor until they received the results of the CPAP. (Document 113-1, Rantz Supplement Affidavit, Exh. P, pp. 2-3).

Simply because Mr. Cameron was not given the test immediately does not amount to deliberate indifference. Rather than fail to respond, the Defendants timely responded to Mr. Cameron's needs, just not in the way he desired. The Defendants were waiting on results of the CPAP machine before performing the halter monitor test. This does not show deliberate indifference.

### g.    Denial of Wheelchair

Mr. Cameron argues Defendants were deliberately indifferent to his medical needs by denying him a wheelchair from March 2005 to November 8, 2005. In his Amended Complaint, Mr. Cameron alleged he missed 157 meals as a result of being denied a wheelchair by Dr. Kohut. He contends he was not able to walk to

the chow hall because of his medical condition.  (Court Doc. 7-1, p. 4).  However,

Mr. Cameron himself admits he was given the wheelchair, just not when he

demanded it.  He has not produced any evidence he required a wheelchair.  The

documentation submitted by Defendants shows they were not deliberately

indifferent.

### h.    Wrong Inhaler and Delayed Medications

Mr. Cameron next alleges Defendants did not always respond to his medical

requests in a timely manner.  For example, between May 22, 2005 and June 25,

2005 he alleges did not get the right inhaler and it was not ordered until over thirty

days later.  He alleges that from approximately October 2007 to June 23, 2008 the

DOC defendants were always late on at least four of his medications every month.

Mr. Cameron also alleges that he was denied his pain medication from February

17, 2006 to February 26, 2006 after making two requests for pain medications.

Mr. Cameron also contends he was supposed to get stockings and wrist

braces on August 17, 2005 but he did not get them until August 22, 2005.  He

stated the delay resulted in leg pains from swollen legs and feet for several days

along with wrist numbness that kept Mr. Cameron from sleeping for over a week.

He has not produced any medical evidence to support his claims of necessity and

causation.  The documents submitted by Defendants show they timely considered

Mr. Cameron's requests for these items, and they were given to him.  However,

responding to his request does not show that the medical need was serious or

immediate.  It appears Mr. Cameron is upset because he was not immediately given

these items upon his demand.  That does not amount to deliberate indifference.

### i.    Dr. Evans Discontinuation of Pain Medications

Mr. Cameron alleges Dr. Evans discontinued pain medications on five

separate occasions, and that each time Dr. Evans would cut his pain medication, he

had to go back to Dr. Rantz to get them re-started.  At the most, this shows a

difference of opinion between two medical providers, which does not amount to

deliberate indifference.  See Toguchi v. Chung, 391 F.3d 1051, 1059-1060 (9th Cir.

2004).  There has been no allegation, let alone a showing, that discontinuing Mr.

Cameron's pain medication was medically unacceptable.  See Jackson v. McIntosh,

90 F.3d 330 (9th Cir. 1996).  Defendants were not deliberately indifferent.

### j.    Mental Health Treatment

Mr. Cameron alleges generally and conclusorily, without factual basis or

medical support, that he received little or no needed mental health treatment.

Defendants presented the following evidence regarding Mr. Cameron's medical

health care.  Defendants show that Mr. Cameron only sought mental health care on

three occasions.  (Court Doc. 100-9: Redfern Affidavit, ¶ 3).  On June 23, 2005,

Cameron submitted 16 kites to MSP mental health staff, to demand specific psychiatric medications and treatment.  (Court Doc. 100-9: Redfern Affidavit, ¶ 4). MSP psychologist Dr. Drew Schoening responded on July 1, 2005, stating, "We have no direct authority over psychiatric treatment at MSP.  I will ask Diana to talk further with you about psychological treatments."  (Court Doc. 100-10: June 23, 2005 Medical Request).  It is striking throughout the record in this case, Mr. Cameron is quick to make strident and frequent demands for immediate action. The demands alone do not establish a serious medical need.

On July 20, 2005, Mr. Cameron sent a new grievance referencing his June 23, 2005 kites and asking for mental health treatment and medications.  On July 21, 2005, Mr. Cameron was seen by Diana Mann in the Mental Health Department at the prison.  Ms. Mann explained some about diagnosis, nomenclature, previous history already documented in his filed, Dr. Schaefer's prescriptive authority, and the rest of mental health staff not being authorized to prescribe medications. Apparently, Mr. Cameron had been in a group but was no longer attending.  He told Ms. Mann he did not want to go to group on the High Side, but would like to do so when he got to the Low Side.  Ms. Mann decided not to refer Mr. Cameron to a psychiatrist.  (Court Doc. 100-12–Mental Health Contact Note).  Here again Mr. Cameron declined care that was offered him.

Mr. Cameron did not send another request to mental health staff until December 8, 2006, seeking assistance for a medical parole.  (Court doc. 100-13: December 8, 2006 kite).  Cameron made no other requests for mental health care between June 23, 2005 and June 23, 2008.  (Court Doc. 100-9: Redfern Affidavit, p. 2, ¶ 6).

Mr. Cameron's only response to Defendants' evidence regarding mental health care is a conclusory denial.  (Court Doc. 110, pp. 80-86).  Mr. Cameron provides no evidence that he needed any specific mental health treatment.  The only remaining mental health defendant is Dr. Schaffer.  There is no evidence Mr. Cameron even sent a request to Dr. Schaffer.  At the summary judgment stage, a party cannot rest on simple denials.  At summary judgment, a litigant must produce facts to support accusations.  Fed.R.Civ.P 56.  Mr. Cameron has failed to do so. Defendants' motion for summary judgment should be granted.

### k.    Dr. Kohut's Statements

Mr. Cameron alleges Dr. Kohut made the unsupported statement that he was trying to kill Mr. Cameron the legal way and stated in public that he wished Mr. Cameron would do the world a favor and hurry up and die.  Such statements, even if proved, are insufficient to state a constitutional claim for relief.  Verbal harassment or verbal abuse by prison officials generally does not constitute a

violation of the Eighth Amendment.  *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (harassment does not constitute an Eighth Amendment violation); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (harassment in the form of vulgar language directed at an inmate is not cognizable under § 1983).

### D.    Conclusion

As seen in detail above, Mr. Cameron has failed to establish a genuine issue of material fact on any specific alleged 8th Amendment violation which might form a basis for relief. All Mr. Cameron's motions will be denied.  The Defendant's Motion for Summary Judgement should be granted for the reasons stated above.

Therefore, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion to Strike Reply (Court Doc. 115) is **DENIED**;

2.  Plaintiff's Motion to Strike Medical Summaries is **DENIED**;

3.  Plaintiff's Motion to Strike Rantz Affidavit and Conviction Evidence is **DENIED**.

Additionally, **IT IS HEREBY RECOMMENDED** that:

1.  Defendant's Motion for Summary Judgment based upon Qualified Immunity (Court Doc. 98) should be **GRANTED**.

2.  The Clerk of Court should be directed to close this case and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure;.

## NOTICE OF RIGHT TO OBJECT TO
## FINDINGS & RECOMMENDATIONS
## AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636, the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

This is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's final judgment.

DATED this 16th  day of April, 2010.


                                        /s/ Keith Strong
                                        Keith Strong
                                        United States Magistrate Judge